UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| JOHNNY ALVAREZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:19-cv-00196-TWP-DML |
| | ) |
| SHEILA HARRISON, and DAVE THOMAS, | ) |
| | ) |
| Defendants. | ) |

**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed by Defendants, Sheila Harrison and Dave Thomas (collectively the "Defendants"). (Dkt 40.) Plaintiff Johnny Alvarez ("Mr. Alvarez") alleges that, as a pretrial detainee at the Jefferson County Jail, he was placed in segregation without a hearing and denied hygiene products, his legal paperwork, and religious materials in violation of the Fourteenth Amendment and the First Amendment. While there is no evidence that Mr. Alvarez's First Amendment free-exercise rights were violated, there is a material question of fact with respect to whether his five-month placement in segregation was punishment that triggered his right to due process. Accordingly, the Defendants' Motion for Summary Judgment is **granted in part and denied in part**.

### I.   SUMMARY JUDGMENT STANDARD

A motion for summary judgment asks the court to find that there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Federal Rule of Civil Procedure 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also

support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B).

The moving party is entitled to summary judgment if no reasonable factfinder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018).

Mr. Alvarez failed to respond to the summary judgment motion. Accordingly, facts alleged in the motion are deemed admitted so long as support for them exists in the record. *See* S.D. Ind. Local Rule 56-1 ("A party opposing a summary judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies on to oppose the motion. The response must . . . identif[y] the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment."); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission"). This does not alter the summary judgment standard, but it does "reduce the pool" from which facts and inferences relative to the motion may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997) (cleaned up).

## II.    FACTUAL BACKGROUND

Because Mr. Alvarez did not respond to the Defendants' Motion for Summary Judgment, the following facts are deemed admitted.

### A.    The Parties

At all relevant times, Mr. Alvarez was a pretrial detainee at Jefferson County Jail ("the Jail"). Defendant Shelia Harrison was the Jail Commander ("Commander Harrison"); her duties

included overseeing the safety and security of inmates. (Dkt. 42-2 at ¶¶ 5–6.) Defendant David Thomas was the elected Sheriff of Jefferson County, Indiana ("Sheriff Thomas"); his duties included overseeing the Jail. (Dkt. 42-3 at ¶¶ 5–6.)

### B.     Jefferson County Jail's Segregation Unit

Prior to April 2019, the Jail did not have a separate segregation unit. (Dkt. 42-2 at ¶ 9.) After multiple fights and assaults, Jail officials converted D Block into an administrative segregation unit. *Id.* at ¶¶ 9, 14. The administrative segregation unit of the Jail is physically similar to the Jail's general population cell blocks, having been converted from a regular cell block. The two-man cells in D Block contain a commode, a sink, two beds, and a window. *Id.* at ¶ 10.

When an inmate is transferred to administrative segregation, he loses access to his personal property, normal commissary items, and in-person visits. (Dkt. 42-2 at ¶ 13.) Inmates in administrative segregation are provided soap, a toothbrush, toothpaste, and deodorant, and they receive the same meals as inmates in general population. (Dkt. 42-4.) They are allowed one hour of recreation time twice a week. (Dkt. 42-4.) Additionally, for two hours every day, inmates have access to D Block's common area, where they can shower and make telephone calls. *Id.*

The Jail's Classification policy states "it is the policy of this jail to create the categorical separation of offenders to provide a 'reasonable' degree of protection from assault, self-harm and preventable illness by optimizing housing choices, supervision methods and provision of adequate healthcare services." (Dkt. 42-5 at 2.) An individual inmate's classification is based upon, among other things, the "[c]urrent and or historical institutional behavior" of that inmate. *Id.* Regarding administrative segregation in particular, the policy states that administrative segregation is a "classified status generally outside the parameter of normal custody housing classifications requiring supervisory level designated housing, supervision and or care." *Id.* at 5.

### C.     Mr. Alvarez's Arrest and Detention at the Jail

On November 5, 2018, Mr. Alvarez was arrested and booked into the Jail in connection with charges that included possession of methamphetamine, resisting law enforcement, and failure to appear. (Dkt. 42-1 at 2.) He was initially placed in the Jail's H Block, a general population cell block. (Dkt. 42-1 at 28.) Mr. Alvarez had been incarcerated at the Jail several times before. *Id.* at 6; Dkt. 42-2 at ¶ 15. Commander Harrison and Sheriff Thomas considered Mr. Alvarez to be a "problem inmate, who frequently caused disruptions and issues with jail security." (Dkt. 42-2 at ¶ 15; Dkt. 42-3 at ¶ 15.)

In February 2019, several Jail inmates beat fellow inmate Charles Main. (Dkt. 42-6.) Mr. Alvarez allegedly helped by using the "call box" to request that Jail staff turn off the cellblock lights. Once the cellblock was dark, he yelled to a group of inmates who then proceeded to Mr. Main's bunk and began beating him. *Id.* at 6; Dkt. 42-7 at 23.

Mr. Alvarez was subsequently charged in Jefferson Circuit Court in relation to Mr. Main's assault with one count of battery and one count of possession of a cellular telephone or device while incarcerated. (Dkt. 42-7 at 21–24.) These charges were later dismissed pursuant to a plea agreement in which Mr. Alvarez pled guilty to dealing methamphetamine—one of the charges for which he was initially arrested and booked into the Jail. *Id.* at 26–32.

Because of Mr. Alvarez's alleged role in the beating, plus another infraction for receiving a tattoo, Commander Harrison determined that Mr. Alvarez posed a safety and security threat to the inmates in the Jail's general population. (Dkt. 42-1 at 8; Dkt. 42-2 at ¶ 17.) Consequently, she ordered that he be transferred to the Jail's newly created administrative segregation block on April 11, 2019. *Id.* Mr. Alvarez did not receive a disciplinary report, nor was there a disciplinary hearing, before he was transferred to segregation. (Dkt. 42-8.) However, neither the Jail's

Classification Policy nor the Jail's Segregation Policy contemplate conducting a disciplinary hearing before placing a detainee in segregation. (*See* Dkts. 42-4 and 42-5 at 5 ("The Jailer upon recommendation by the classification officer should approve all administrative segregation custody classification designation.").)

Mr. Alvarez was held in administrative segregation for approximately five-months. During that time period, he filed four grievances. (Dkt. 42-8.) His grievance dated April 18, 2019, stated, "I would like to know why I[']m in segregation and how long I[']m going to be here. I[']m certain I do not deserve to be here so can you please remedy the situation." *Id.* at 2. Commander Harrison responded that he had been placed in administrative segregation due to his "involvement in the situation in H block on 2-26-19", referring to the above-described beating of inmate Main. *Id.* Mr. Alvarez did not follow up after receiving this response.

Mr. Alvarez did not file another grievance for several months, but he then filed three grievances in less than ten days. In a grievance mistakenly dated January 2, 2019—but dated received by staff on July 2, 2019—Mr. Alvarez submitted the following:

> I am filing this grievance [because] I have been in seg. for almost 4 months and have no write ups or have been in no trouble. You told me that I was involved in an incident on 2/26/2018 [sic] but I had nothing to do w[ith] that. You have taken my visits, commissary, religious material and locked me down for 22 hours a day for absolutely no reason w[ith] no disciplinary hearing or paperwork, claiming I[']m on admin. seg. If you will not release me from seg. WHAT OTHER STEPS MUST I TAKE TO GRIEVE THIS??

(Dkt. 42-8. at 3) (emphasis in original). Commander Harrison responded to the grievance, stating that Mr. Alvarez was placed in administrative segregation after he was "involved in a fight [and] had a cell phone in a block," and that he had been deemed "a safety [and] security risk." *Id.*

On July 7, 2019, Mr. Alvarez filed another grievance, essentially restating the previous one. *Id.* at 5. On July 12, 2019, Commander Harrison responded, "I am not going to continually

5

answer the same question repeatedly. You are on admin. seg. [and] will remain there until you leave for being a safety [and] security threat." *Id.* at 5.

On July 11, 2019, Mr. Alvarez filed another grievance, again denying any role in the fight and denying that he possessed a cell phone. *Id.* at 4. Commander Harrison responded to this final grievance by stating that there were no further steps for Mr. Alvarez to take, and that Sheriff Thomas agreed with the decision to transfer and keep him in administrative segregation. *Id.*; *see also* Dkt. 42-3 at ¶¶ 18–19.

During his placement in D Block, Mr. Alvarez continued to cause trouble, with Jail records showing that on May 4, 2019, he used cardboard to prop open the door to his cell in the administrative segregation unit during a lockdown, and on June 28, 2019, he threatened to fight another inmate. (Dkt. 42-1 at 10, 28.)

Commander Harrison "periodically reviewed and assessed the proper Jail classification of each inmate, including [Mr.] Alvarez," and based on his "prior institutional behavior, the assault on inmate Main, and continuing disruptive behavior while in administrative segregation," she determined that Mr. Alvarez "continued to pose a security and safety risk," warranting continued placement in segregation. (Dkt. 42-2 at ¶¶ 21–22.)

After pleading guilty to dealing methamphetamine, Mr. Alvarez was sentenced and transferred from the Jail to the Indiana Department of Correction ("IDOC") on September 15, 2019. (Dkt. 42-7; Dkt. 42-1 at 28.) Thus, from his initial placement until his transfer to IDOC, Mr. Alvarez spent 157 days—a little over five months—in the administrative segregation block.

### III.   DISCUSSION

In his Complaint, Mr. Alvarez alleges the Defendants violated his rights under the Due Process Clause of the Fourteenth Amendment because he was placed in segregation without a

written report or hearing, he received no periodic review of his placement in segregation, and the conditions of his placement deprived him of his basic needs and caused psychological distress. He also alleges that he was denied religious materials in violation of the First Amendment.

### A.   Fourteenth Amendment Claims

Mr. Alvarez's rights as a pretrial detainee are derived from the Due Process Clause of the Fourteenth Amendment. *Hardemann v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019) (citing *Kingsley v. Hendrickson*, 576 U.S. 389 (2015)). "[I]t is settled that pretrial detainees possess a constitutional right 'to be free from punishment.'" *Williamson v. Stirling*, 912 F.3d 154, 173 (4th Cir. 2018) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). Accordingly, "[a] pretrial detainee cannot be placed in segregation as a punishment for a disciplinary infraction without notice and an opportunity to be heard; due process requires no less." *Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002); *see also Kingsley*, 576 U.S. at 400 (noting that "pretrial detainees (unlike convicted prisoners) cannot be punished at all").

However, not all pretrial detainees are entitled to due process before placement in segregation. If a detainee is "placed in segregation not as punishment but for managerial reasons," such as "to protect jail staff from his violent propensities," no process is required. *Higgs*, 286 F.3d at 438. Thus, the relevant inquiry for a substantive due process claim is whether Mr. Alvarez was placed in segregation as punishment or for a managerial reason. "[A] particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose." *Rapier v. Harris*, 172 F.3d 999, 1005 (7th Cir. 1999) (citing *Bell*, 441 U.S. at 538); *Kingsley*, 576 U.S. at 398.

*Higgs* is instructive. 286 F.3d 437. Higgs, a pretrial detainee, fought with another inmate and was placed in segregation without a hearing. *Id.* at 438. Like Mr. Alvarez, Higgs filed a grievance asking why he was placed in segregation and was told that he was there "for repeatedly threatening and harassing other inmates and has continued on lockdown as he has repeatedly cussed and attempted to intimidate correction staff." *Id.* The Seventh Circuit found that it was unclear "whether Higgs was placed in lockdown segregation for preventative purposes or as punishment" since the grievance response was "equally consistent" with both purposes and remanded for further proceedings. *Id.* at 438–39.

Here, too, there is a question of material fact with respect to whether the Defendants put Mr. Alvarez in administrative segregation to punish him for his participation in the assault or for the managerial purpose of protecting others from his violent propensities. In response to Mr. Alvarez's first grievance, Commander Harrison stated that Mr. Alvarez was there "due to [his] involvement in the situation in H block on 2-26-19." (Dkt. 42-8 at 2.) This statement could be construed as a punishment. In response to his grievance dated January 2, 2019, Commander Harrison again attributed his continued placement in segregation to the assault but added, "you are a safety [and] security risk." *Id.* at 3. The latter statement suggests a managerial purpose. Taken together, these explanations—even if not "equally consistent" with punishment and managerial purposes—are ambiguous enough that a reasonable jury could reach either conclusion.

The Defendants argue that Mr. Alvarez was not owed any due process before his placement in segregation because he failed to show that the duration and conditions in D block "imposed an 'atypical and significant hardship on [him] in relation to the ordinary incidents of prison life'" sufficient to trigger a liberty interest. (Dkt. 41 at 10 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).) But the *Sandin* analysis does not apply to pretrial detainees because "they are not under

8

a sentence of confinement, and therefore it cannot be said that they ought to expect whatever deprivation can be considered incident to serving such a sentence." *Rapier*, 172 F.3d at 1004–05; *see also Dilworth v. Adams*, 841 F.3d 246, 251 (4th Cir. 2016) ("*Sandin*, which concerned the punishment of convicted prisoners, has no application to pretrial detainees. … Indeed, the Court in *Sandin* expressly distinguished *Bell* on precisely this ground.") (cleaned up) (citing *Sandin*, 515 U.S. at 474–75, 484).  There is a question of material fact as to whether the conditions Mr. Alvarez endured in the D Block—limited time outside his cell, limited commissary, no access to personal items, and no visitors for five months—were reasonably related to jail safety or were excessive in relation thereto.[1]  *Bell*, 441 U.S. at 537–39.

Further, if Mr. Alvarez's placement in segregation was punishment, he was entitled to procedural due process in the form of advance written notice of the charges, a hearing at which he could call witnesses, and a written statement of the evidence relied upon and the reasons for imposing the punishment.  *Cooper v. Haw*, 803 Fed. App'x 942, 946 (7th Cir. 2020) (citing *Bell*, 441 U.S. at 535–36, *Rapier*, 172 F.3d at 1005, and *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985)).  Thus, the Defendants' argument that Commander Harrison's responses to Mr. Alvarez's grievances constituted sufficient procedural due process fails.  The cases relied upon by the Defendants—*Hardway v. Meyerhoff*, 734 F.3d 740 (7th Cir. 2013), and *Gibson v. Pollard*, 610 Fed. App'x 571 (7th Cir. 2015)—also involved convicted prisoners rather than pretrial detainees and therefore applied the *Sandin* analysis.  Because the assault was the principle proffered reason for Mr. Alvarez's placement in segregation, it is significant that Mr. Alvarez

---

[1] The Defendants rely on this Court's recent order granting summary judgment in *Johnson v. Harrison*, 4:19-cv-00147-TWP-DML. That case arose from a similar set of operative facts: Mr. Johnson was placed in the segregation unit by Commander Harrison for participating in the beating of Mr. Main. The Court determined that the lack of hygienic and sanitary supplies provided to Mr. Johnson while he was in the segregation unit did not constitute a constitutional deprivation under the Fourteenth Amendment.  *See* 4:19-cv-00147-TWP-DML, Dkt. 48 at 8. But Mr. Johnson challenged only the lack of these items and not that placement in segregation was a due process violation of his rights.

denied involvement in the fight in his grievances but did not have the opportunity to do so at a hearing. (*See* Dkt. 42-8.) Additionally, Mr. Alvarez's other previous write-up was for the nonviolent act of receiving a tattoo. (Dkt. 42-1 at 8.)

There is also a question of material fact as to whether the five-month period was "excessive relative to [Mr. Alvarez's] infractions." *Williamson*, 912 F.3d at 181. Once placed in segregation, Mr. Alvarez was entitled to periodic review of his placement to assess whether he should remain there. *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017). The periodic review must be "meaningful and non-pretextual." *Id.* at 527 (citing *Hewitt v. Helms*, 459 U.S. 460 n. 9 (1993)). Commander Harrison testified that she periodically reviewed Mr. Alvarez's placement and determined each time that he should remain in segregation based on his "prior institutional behavior, the assault on inmate Main, and continuing disruptive behavior while in administrative segregation". (Dkt. 42-2 at ¶¶ 21–22.) But it is unclear how often she conducted the review or what the review entailed. Further, Commander Harrison's response to Mr. Alvarez on July 12, 2019, stated that he would remain in segregation until his transfer to IDOC, (Dkt. 42-8 at 5), which did not occur for another two months. A factfinder could conclude this decision failed "to take into account any updated circumstances and future prospects" to determine the necessity of his continued confinement in D Block. *Isby*, 856 F.3d at 528. Accordingly, summary judgment is **denied** as to this claim.

B.       **First Amendment Claim**

To succeed on his First Amendment free-exercise claim, Mr. Alvarez must "submit evidence from which a jury could reasonably find that the defendants personally and unjustifiably placed a substantial burden on his religious practices. A substantial burden puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thompson v. Holm*, 809 F.3d 376, 379 (7th Cir. 2016).

Mr. Alvarez alleges that the Defendants confiscated "religious materials" but he did not identify what materials were taken, how or whether that affected his ability to practice his religious beliefs, or even what religion he practices. Accordingly, the Defendants' Motion for Summary Judgment is **granted** with respect to Mr. Alvarez's First Amendment claim.

## IV.   CONCLUSION

The Defendants' Motion for Summary Judgment, Dkt. [40], is **DENIED** as to Mr. Alvarez's Fourteenth Amendment claims and **GRANTED** as to Mr. Alvarez's First Amendment claim. The Fourteenth Amendment claims against Commander Harrison and Sheriff Thomas **shall proceed to settlement or trial** if one is necessary. The Court prefers that Mr. Alvarez be represented by counsel at a settlement conference and trial. The Court *sua sponte* reconsiders its Order, (Dkt. 23), denying Mr. Alvarez's Motion for Assistance with Recruiting Counsel, (Dkt. 22). Mr. Alvarez's Motion for Assistance with Recruiting Counsel, Dkt. [22], is **GRANTED** to the extent that the Court will attempt to recruit *pro bono* counsel to represent him in this action.

**SO ORDERED.**

Date: 6/10/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Johnny Alvarez, #272911 6U-213L
SHORT TERM OFFENDER (STOP) FACILITY
727 Moon Road
Plainfield, Indiana  46168

Justin M. Schaefer
SCHILLER BARNES MALONEY PLLC
jschaefer@sbmkylaw.com

Michael S. Maloney
SCHILLER BARNES MALONEY PLLC
mmaloney@sbmkylaw.com

11